We'll hear argument next in Case 19-199, Salinas v. United States Railroad Retirement Board. Ms. Harris. Mr. Chief Justice, and may it please the Court, because Congress in Section 355F subjected any final decision of the Railroad Retirement Board to judicial review, all final decisions, including reopening denials, are reviewable. The government is incorrect that 355F limits review only to decisions under 355C. First, the government reads 355F to say, Parties aggrieved by any final decision under 355C may challenge any such final decision. That impermissibly adds the word such. 355F says any final decision holds up. Any final decision tracks the broad language of Section 231G, the RRA's parallel judicial review provision governing claims like Ms. or Ms. Alina's. Second, only our reading makes sense of both the RUIA and the RRA. Section 355C mandates hearings or board appeals for specific RUIA decisions. If Congress wanted to limit judicial review across both statutes, the RRA should parallel 355C. But it doesn't. The RRA doesn't mandate any hearings. The RRA mandates board appeals for different decisions than 355C. And Section 231G extends judicial review beyond decisions entitled to board appeals. It's not plausible that Congress can find judicial review under both statutes to decisions with no similar significance under the RRA, which applies to 96% of beneficiaries. And third, limiting judicial review to decisions under 355C would foreclose review of all other decisions, like refusals to modify or terminate benefits. To avoid that result, the government tries to bend 355C to fit most of these decisions. But if the text is that broad, there's no principled basis for excluding reopening denials from 355C. Counsel, let's begin with 231G, since this is an RRA case. And it says that what's subject to judicial review are, quote, decisions of the board determining the rights or liabilities of any person under the Act. Now, board determinations, the Act is just chock full of them. They're determining substantive things, like who's eligible for how much money, who's eligible for annuity, what are the benefits for spouses, where does the money come from. Nothing like a decision about whether to reopen. So shouldn't we look at that under the RRA in determining whether or not such procedural questions are subject to judicial review? No, I think the text of 231G and its use of that phrase, determining the rights or liabilities of any person, is more than capacious enough to fit a decision like a denial of reopening, which is the agency's last word and denies a claim for benefits. Well, maybe in the abstract you can say, well, this is a determination of a right. But the phrase determinations of the board, it's almost a term of art in the statute. And they're talking about rights and liabilities in a substantive way. Well, I think the rest of 231G actually refutes an interpretation that it's limited to the initial substantive benefits determination, because if you look at the except clause of 231G, it says, except at the time within which proceeding for review of a decision with respect to an annuity or other listed benefits may be commenced. So that phrase is clearly narrower than the phrase decisions determining rights or liabilities, which signals that things like reopening denials would certainly fit within the first clause. Well, the only type of determinations that are reviewable are, even if you're right about rights or liabilities, the rights or liabilities under the Act. And the reopening right isn't under the Act. It's under the regulation. But I think the court noted in Cusana v. Holder that the word under is a bit of a chameleon, and it depends on context. And it would be strange to think that the RRA only means under the statute and not under the different regulations that the board might promulgate, when we have a statute here where Congress was pretty clear that it was delegating the board a lot of power to make it. Well, but that's like saying just because Congress has delegated authority under the Constitution to enact statutes, that every violation of a statute is a constitutional violation. And that doesn't make sense. Well, I think there's also a problem that if you think that it has to be under the statute only, then you also have a weird asymmetry with the RUIA, because there are some decisions that are mentioned in the text of the RUIA, but not under the text of the RRA. Thank you, counsel. Justice Thomas. Justice Thomas. Thank you, Mr. Chief Justice. Ms. Harris, what is the statutory or regulatory basis for the reopening? What I'm getting at is whether or not you have a stated right to a reopening. There is a regulatory basis for reopening in, for instance, 20 CFR 261. And it's something that the board understood as early as 1939 would always be part and parcel of its decision-making because of the importance of checking errors and preventing arbitrariness in a complex benefit scheme. So why is it when the agency decides not to reopen a case, it's simply deciding not to decide that again or to reconsider it, as opposed to again deciding sort of indirectly the underlying substantive issue? So I think there's a key distinction that underlies a lot of this court's cases and explains why there's such a strong tradition of judicial review for reopening denials, especially when they involve new evidence like the case here. And that reason is when you have something where a litigant is, for instance, asking for reopening on the basis of new evidence or new circumstances, that does make the claim different and makes it something that's possible for courts to review in a way that's different from maybe a pure rehash. So in Brotherhood of Locomotive Engineers, for instance, the court distinguished between those two things and said it would be fundamentally unfair to deny someone the opportunity to present new evidence that the agency hadn't considered before. And that also, I think, distinguishes Sanders, which did involve that kind of rehashing claim. And the court has thus considered a rehashing type claim as potentially committed to agency discretion, but has always allowed judicial review of denials of reopening like this one that are based on new evidence. And I think that reflects that it's such an important safeguard to keep the agency accountable in this context. But how far do you go with that, Ms. Harris? What if we denied CERT or denied petition for rehearing CERT in a case that totally involves state law? Are you saying that we actually went back or that we reached a state law issue simply by denying CERT or by denying the petition for rehearing? No, I'm definitely not saying that. What I'm saying is those types of decisions might constitute final agency action in the technical sense, but those would involve a rehashing of the same record that was always before the court in your sort of parallel hypothetical, unlike a situation here where there is new evidence. And I think that's why Brotherhood of Locomotive Engineers actually used the rehearing en banc hypothetical to reopen. And I think that's why Brotherhood of Locomotive Engineers actually used the reopening type claims, which are judicially reviewable, and rehashing claims, which are generally committed to agency discretion. Thank you. Justice Breyer? My question was basically the same as the chief justices. And it seems to me on that question you have going against you. First, the language of it, rights and liabilities, read in light of what we said in two cases. It's both your home visiting nurse and also Califano v. Sanders. Then you have the fact that no lower court decided in your favor, I think, maybe there was an exception, I don't know, since the 1960s or 1970s. And since then, the cases have gone the other way in the lower courts. And it would make a kind of hash of the statute of limitations. Otherwise, you have the presumption of judicial review in your favor. So I want to see if there's anything you want to add on the negative part. Sure. I'd like to take your home and Califano first, because I think that your home, when it said that there was a, that reopening seemed like a refusal to make another decision, your home, again, is sort of talking about the situation where they did a rehash claim. And if you took your home to be for closing judicial review of all sorts of reopening claims based on new evidence, that would be a sea change in the way the court has considered them. What I don't see is how we can do the one without the other. We have language here that the chief cited. How do we do that? How do we get to that point in your view? Well, I think if you thought that a reopening denial was never a decision that determined rights or liabilities, you'd have serious questions about why it was ever considered a final decision. And there are so many contexts in which it is considered a final decision, including countless immigration decisions and also the interstate commerce context. And I think Califano, which you mentioned, actually shows exactly why this statutory language is so much in our favor. The language in Califano involved a statute, it's section 405G, that says judicial review is confined to final decisions made after a hearing. And in Smith v. Berryhill, the court emphasized that while reopening could be a final decision, it certainly wasn't one made after a hearing in that context. The other part of Califano that's important is that statute also had an express provision saying there is no judicial review of other provisions unless hearing provided in 405G. So if you didn't involve a hearing, no review under the statute. And here you have the opposite. You have no express language requiring judicial review of decisions like reopening. And it would be extraordinary to say that that alone was sufficient to overcome the presumption of review, especially given the long tradition of reviewing denials of reopening that do present new evidence. And your final point, there is obviously the D.C. Circuit held in 2016 that denials of reopening in the Railroad Retirement Act context in RUIA are judicially reviewable. And the D.C. Circuit in that case noted that courts had been reviewing these decisions for some 50 years. There's no flood of abuse of litigation and no apparent circumvention of the limitations period because these are new types of decisions that aren't simply rehashes of what happened before. Thank you. Justice Alito? I'm interested in the interplay between the Railroad Retirement Act and the Railroad Unemployment Insurance Act. This is a case under the former. Is there any reason why we can't decide it simply by looking at the language of that provision, Section 231G? Well, you could do it that way. But, of course, that language then says that it does tie judicial review to the RUIA itself. So I think that means that you should at least consider whether there would be anomalies created between circumscribing review under one statute versus the other. Well, is that true under the language of the provision? It says decisions of the board determining the rights or liabilities of any person under this subchapter shall be subject to judicial review. That tells us what is subject to judicial review. Then it goes on to say in the same manner, subject to the same limitations, et cetera, as the RUIA. That tells us how the review takes place. Why do you think that specifies what is reviewable? I think you could read the corresponding rights and liabilities language as suggesting that. But in all events, if you just wanted to look at 231G, reopening denials do determine rights or liabilities of any person because they are a denial of someone's entitlement to benefits. It would be very strange to think that that language alone would be for closing judicial review of other decisions when there's no sort of express form of reviewability in there. Well, what takes me aback in approaching the case in this way is that both you and the government, who are more immersed in this than we are, have spent a lot of time debating judicial review under the provisions of the Railroad Unemployment Insurance Act. So do you think that unacceptable anomalies would occur if we were to decide the review question here without considering or deciding the review question under the Railroad Unemployment Insurance Act? And because my time is going to expire, let me fold in one other question. How often does a review occur under these two different acts? Is there a big difference in the number of cases? There isn't a lot of difference in the number of cases. It's pretty rare to get review under a reopening under both. And I think the only anomaly that would happen with respect to the two statutes is probably the employer coverage determination. So there are some questions that are common in the two schemes. And so there could potentially be anomalies with respect to those, but not with respect to the particular. Thank you. Justice Sotomayor? I'd like to continue with Justice Alito's question. Because, yes, there might be differences, but you haven't explained to me why those differences are important. You just mentioned the employer determination. But wouldn't that basically be a determination, an initial determination of entitlement to benefits? So why is it important? Well, it could be under 355C, but the RRA doesn't actually even mention employer determinations as something under the statute. It just says the definition of an employer is the same under both statutes. But just to sort of back up and think through why would it be very strange to superimpose, say, the limitation of 355C across the whole statute? 355C is a pretty specific rule under the RUAA that pertains to who is entitled to appeals or hearings under that particular short-term benefit statute. And it really doesn't have any counterpart in the RRA in total. The only thing the RRA provides is that in Section 231FB3, someone can obtain a right of appeal to the board based on a decision on your application for an annuity. So you would expect that if 355C were sort of controlling throughout the scheme, the RRA would at least attach significance to all the types of decisions that are being listed. And I would also push on the definition of an initial determination with respect to what exactly you can fit into it. I guess I'm still a little troubled, and I'm sorry for my denseness, but it seems to me that all of those questions under 355 that you speak about go to the initial determination of rights or liabilities of any person. It's basically saying this kind of employer is liable or not liable to you. That's a clear determination of rights or liabilities under the Act, and so it still would be subject to judicial review. But hearkening back to what Justice Thomas said, at least in home services, we thought of or could think of, and I understand it was because of the regulatory scheme, that a motion to reopen was not a new determination of rights or benefits, that it was a decision not to reconsider that question. So why shouldn't we think of it that way here? Because if you thought of it that way, I think you'd have to override a really long tradition of judicial review in cases like Kuchana v. Holder and Brotherhood of Locomotive Engineers that holds the contrary and says, denials of reopening that are based on new evidence are judicially reviewable because they're finally agency action. And the situation in which there is a sense that there is a rehash, that there is no new evidence presented, that was also the case in Kuchana v. Holder. So your home actually cites Brotherhood of Locomotive Engineers at the end, and the case would make not very much sense if you thought, you know, denial of reopening can never be final decisions, can never be reviewable. Because the second half of that opinion is all about, well, yeah, it might not be a final determination under the regulation at issue, but is it still judicially reviewable? And the court said, no, based on the jurisdiction stripping language of the Medicare statute, and also cited a Brotherhood of Locomotive Engineers and said, this is just the kind of rehash claim we don't generally have. So I've well run out of my time, but thank you. Justice Kagan. Ms. Harris, could I ask you a little bit more about this distinction you're making between new evidence claims and rehash claims? And this really goes back to Justice Breyer's question, and I wasn't quite sure I understood your answer to him. Because he said, well, I understand the distinction you're making, but where do we get that distinction from the statutory language? Why is one determining rights and liabilities and the other is not? So the distinction, I think, comes from the idea that they are both final decisions that deny someone benefits or deny someone whatever they're asking on a reopening claim. The reason why the new evidence or changed circumstances claim is reviewable and has long been reviewable in multiple contexts is that it is not something that is unmanageable for courts to figure out. It's not committed to agency discretion by law. And the reason is you can figure out that there's something that hasn't been presented to the agency before that might change the outcome, and it would be inequitable not to let someone litigate that and get judicial review of that type of decision. Whereas the rehash type of claim does, as in Sanders, raise potential concerns about circumvention of the limitations period. So it's sort of a combination of the sense of what is a final decision, but also the other step of, is it the kind of final decision that courts can review in a meaningful sense? And that, I think, is the distinction, again, that Brotherhood of Locomotive Engineers most clearly drew. Okay. Can I ask you a question about 355? Go back to where you started. I guess I don't quite understand your argument there. If I could just sort of simplify 355, it would read like this. Any claimant, any railway labor organization, any base year employer, or any other party aggrieved by a final decision under subsection C. Why wouldn't the under subsection C language apply to each of those three identified and one catch-all party? So I think there are three reasons why the last antecedent rule remains the default and wouldn't be overcome there. First of all, if the government were right, I don't think Congress would have let all of the parties challenge any final decision. Congress would presumably say those parties could challenge such final decision because it's strange to have any final decision full stop if there's no one who could challenge anything else. And second of all, I think there's contextual reasons why other in that phrase is a word that's differentiating between meaningful classes of litigants. The first three listed parties, claimants, labor organizations, and base year employers are very differently situated for purposes of the RUIA than the residual parties. And what I mean by that is the first three parties can be aggrieved by all kinds of decisions whether or not they're listed in 355C. But the residual parties are people who are described in 355C itself who can only be aggrieved by decisions that are described in 355C. And one example of that would be the non-base year employers under the RUIA. Thank you, Ms. Harris. Justice Gorsuch? Good morning, Ms. Harris. Let me pick up right there. Let's suppose for purposes of this question that I agree with you that under 355F reopening petitions could be reviewed under the RUIA. Let's also suppose that the language in 231G suggests that reopening petitions under the RRA cannot. And that leads to kind of an anomaly. I think we'd all agree. And I'm not sure I could understand the rational reason for the distinction, which makes me wonder what about 355G, which, as you know, suggests that findings of fact and conclusions of law by the board in their determination of claims are final and conclusive on all persons. And it makes me wonder whether Congress ever anticipated the idea of reopening decisions or even authorized them. And if Congress didn't authorize them, if they were never anticipated, if they just simply weren't permitted under 355G, what should that tell us about both F, 355F, and 231G? Well, a couple of points on this. First of all, with respect to the text of 355G, that is a review exclusivity provision under the RUIA. And it says it is talking about the determination of any claim for benefits or refunds. And our argument in the first instance is that's certainly capacious enough to include reopening. And one clue that that might be the case is that the delegation to the board would still be looking at the broad delegation of power. Well, let's put that aside for the moment. Let's say I just disagree with you on that. Then what? Then I think you'd still be looking at the broad delegation of power that Congress gave to the board and said in the delegation of power that the board was supposed to create regulations for, quote, all controversial matters under the act, which is extremely broad. The other things I'd point you to are the fact that reopening since 1939 in the view of the board is something that the board thought that it actually had to do. And so I think there's a good reason the government hasn't argued that reopening simply isn't authorized under the statute. Why doesn't it suggest, though, that this is purely a matter of regulatory grace and it isn't contemplated, required, or maybe even authorized by statute? But it's something the executive can do and that we really have no role in. It can only benefit a claimant to have a reopening. It can't harm a claimant. And at that point, we have nothing to say on the matter. Well, two points there. I mean, first of all, the idea that discretionary determinations that only help claimants would be immune from judicial review on that basis would be a sea change in all the other contexts. Like, for instance, immigration, where reopening for about 80 years only... Well, let's stick to the Railroad Retirement Act and maybe even the UIA. What harm would there be in that? What harm would there be in not having judicial review of reopening? I think there would be a massive harm here. I mean, it's a critical safety valve that ensures reasoned decision-making for decisions that can have life-changing consequences for people. And judicial review really has a strong interim effect in this context for agencies to keep them accountable. And I think that it would be extraordinary to think that there's a situation where the agency... You have to explain the benefits of judicial review. The reason for the presumption... Counsel, thank you. My time's expired. Justice Kavanaugh. Good morning, Ms. Harris. I want to pick up something Justice Breyer brought up about the history of this issue in case law, because my understanding is very different from his, and I just wanted to get that out there and you can respond. So here's my understanding of what's happened on this issue over the years. In 1966, Judge Friendly issued an opinion for the Second Circuit that said there was judicial review of these kinds of reopenings, and that's been the law in the Second Circuit for 54 years now. It's in a but see in the government's brief, but that's been the law in the Second Circuit. Then along comes Califano in there, and then the Courts of Appeals essentially pick up on Califano in this context without paying attention, in my view, to the language difference in Califano. And you see the Seventh Circuit and the Fifth, Fourth, and Third all kind of go on the Califano road. Also a little bit with the greater includes the lesser point. And I think the government itself was going to have to acknowledge here. And so they're backfilling with textual arguments on 355F, which you've answered, and then 231G. And I just would point out, I think this is right, but you tell me if I'm wrong. The government has never argued in this way at the 231G point in all these cases. You go back and look at the briefs, and it's just not been part of that, presumably because they've long understood, the Railroad Board, at least, has long understood that denials of reopening, just like grants of reopening, obviously change your benefits if it's a grant of reopening. And so denial, too, determines your rights and liability. So I think that, I guess my understanding of the history of this is quite a bit different in terms of the case law. I'm going back to Judge Friendly's opinion and what Justice Breyer said. I mean, that's a favorable question to you, obviously, but if you want to fill in any gaps there, go ahead. Sure. I mean, I obviously agree with the recount of the history, and I also think that your account of the government's position is spot on. The government's brief at pages 14 and 29, their position has never been that 231G's determining rights or liabilities language, if you untethered it from the RUAA, would exclude denial of reopening. Their position is those are just code words for decisions under 355C, and that doesn't seem like a plausible view. And the government, as you note, has also agreed that the Railroad Retirement Board from its inception has always thought that reopening was something that the board could and indeed should do in certain circumstances. And so I do think it would be extraordinary to think that when there's such a long history of the board understanding its own powers to include reopening, and when there is language that is certainly at least capacious enough to plausibly include this type of decision, you would read in some sort of exclusion or review when there is no express bar in the statute saying there is no review of other decisions, which again distinguishes this case from Califano and the Social Security statute. Thank you. Justice Barrett? Good morning, Ms. Harris. So, in thinking about the 231G question and whether the denial of a motion to reopen determines rights or liabilities, I think when you look at 261.2 and the regulations, if you're thinking about 261.2B, if a motion is to reopen, then I can see how that might qualify as a determination of a right or a liability. But what about in Mr. Salinas' case? I mean, is it fair to characterize his motion here as a motion to reconsider the denial of his motion to reopen before? Yes, I think it would be absolutely fair. And indeed, that is the provision the board mentions below when it's thinking about it, and that's at pages 7A to 8A of the petition appendix. And the reason is Mr. Salinas' claim is that he wanted to present and was not able to present important medical evidence in 2006 about his depression and anxiety that would have affected the board's understanding of whether it should find good cause to excuse his late filing in that 2006 claim. So that's really in the heartland of the kind of new evidence type claim to be looking for. It's new evidence that bears on his motion to reopen, not on the underlying determination of his entitlement to benefits, right? Well, I think it bears on both here. It bears on, first of all, why he was not allowed to pursue his 2006 claim, which was the board said, we're not going to excuse you for not proceeding further when he failed to file in a timely fashion to continue litigating it. And he said, I'm really sorry. I wasn't able to file within the 60-day period. I have pretty serious depression. And at that time, he wasn't able to get the new medical evidence that would have allowed him to present that argument to the board. So I think it bears on both here. I think it bears on both here. Let me expand it beyond Mr. Salinas' motion here. Because what I'm getting at is, even if you could consider some grounds for not reopening a determination of rights or liabilities, I'm not sure that's true of all. So, for example, what if it's just flatly that somebody came forward beyond the four years permitted in 261.2B and they just said, sorry, it's late. That's not really, doesn't fit neatly into the definition determination of rights or liabilities. Well, I think if you thought that a determination that raises new evidence in general is about your rights and liabilities because there's a denial of your benefits claim and you're being denied an opportunity to present that new evidence, the question would sort of be, is that regulation as applied in this circumstance arbitrary in cutting that off? And the other piece of it is the board obviously has the discretion to say that, yes, even though four years have passed, you presented new evidence and we're willing to consider that here. And the question is always going to be, was the board acting reasonably in excusing that or not? So I think we kind of end up in the same place, which is maybe this all just underscores why denials of reopening that present new evidence have for so long in so many contexts been considered judicially reviewable. Thank you. My time's expired. A minute to wrap up, Ms. Harris. Thanks, Chief Justice. Just want to circle back on some of the points with respect to why is this different from your home in Sanders? And I think it is really critical to think about that because Sanders for so long had been, it really is focused on a very different text about the Social Security Act. And I think that's a classic case of if Congress in the Rural Retirement Act or the RUIA had intended to preclude judicial review and seal it off, it would have chosen a structure like this. You have 26 USC 405B that says in the Social Security context, here's what you have to do to get a hearing. You have 405G that then says there's only judicial review of final decisions made after a hearing. And then in 405F the act says you can't have any other kind of decision reviewed except for through 405G. And that's the kind of sealing off of review that is actually missing here. Even if you had questions with respect to whether 231G does or does not plausibly encompass denials of reopening and in what context, there is nothing that takes away judicial review under the RRA. Thank you, Ms. Harris. Mr. Raynor. Thank you. Mr. Chief Justice and may it please the court. This case is about a narrow issue. Whether the Railroad Retirement Board's refusal to reopen a prior benefits determination is judicially reviewable. Every tool of statutory interpretation indicates that the answer to that question is no. First is the text. Section 355F of the RUIA provides for judicial review only of those decisions made under subsection C. Subsection C is the RUIA's exhaustion provision and it provides for internal and judicial review. Subsections are not listed in subsection C and therefore are not judicially reviewable. RUIA's structure confirms this reading. RUIA's exhaustion, judicial review, and review exclusivity provisions all work together to ensure that the most important board decisions receive internal and judicial review through the mechanism specified in subsection F. Those decisions must be reviewed through subsection C. Lastly, the government's reading also accords with the policies underlying the relevant statute. Congress chose not to require reopening at all, much less judicial review of reopening. The agency's decision in its discretion to offer reopening does not entitle a claimant to yet another opportunity for judicial review. Petitioner reaches a contrary conclusion only by rejecting the interpretation and affirming the judgment below. Mr. Raynor, I don't think I heard you mention 231G. Maybe I missed it, but you don't get to it in the argument section of your brief until 13 pages into it. The question is judicial review under the RRA. There is a provision in the RRA that talks about judicial review. Why are you so shy about that one? Your Honor, the way that we think the statute works is that 231G makes decisions under the RRA reviewable to the same extent a corresponding decision under the RUIA would be reviewable. Well, it limits it makes some decisions reviewable to the same extent as the RUIA, but you have to go through its discussion of what decisions are. It's determination of rights or liabilities that have to be under the Act. Do you need a decision that covers 355F to decide this case? No, Your Honor. I agree with you that the determination of rights or liabilities language in section 231G is a gating mechanism. And if you didn't think that a reopening denial qualified as a determination of rights or liabilities, which in our view would be correct under your home, then judicial review would not be available under the RRA. Is there some problem in terms of the practical administration having arguably or perhaps different standards or different scope of reviewability under one Act rather than the other? I don't think there would be huge practical problems, Your Honor. And in fact, our position is that the types of decisions made under subsection C are substantive determinations of rights or liabilities. And so that language in 231G interpreted according to its plain meaning would pick up the decisions under subsection C. So even if you wanted to go just on the basis of a plain meaning approach to determinations of rights or liabilities, that would allow conformity between 231G and section 355. Well, you say just a plain meaning approach, which sounds a little bit of disdain, but why? The RRA program is the vast majority of railroad benefits, right? I mean, the RUIA is just a tail on the dog, right? That's correct. Okay. Thank you, Counsel. Justice Thomas? Thank you, Mr. Chief Justice. Mr. Rayner, I agree with the Chief Justice in wondering why you are so reluctant to argue 231G. But let me ask you this. Could the agency repeal its reopening? Yes, Your Honor. Petitioner doesn't dispute that. Reopening is purely a matter of grace. The statute doesn't require it, and the agency could repeal its reopening regulations tomorrow. If that's the case, how could it be then that it's a final decision if it's purely discretionary? I think the hard connection for me to make is how do you get from a discretionary decision with respect to reopening to the underlying issue of benefits? Yes, Your Honor. We certainly agree with you that a mere denial of reopening doesn't determine benefits. It doesn't determine rights or liabilities. Of course, if the agency reopens the decision and re-adjudicates the merits, that would be a different matter. But that's not an issue here. So that would be a final decision. And I think the other side of that argument, though, would be the decision not to reopen would be a denial of the benefits, even if you don't reconsider or hear more evidence. What do you make of Ms. Harris' distinction between rehearing or reopening petitions in cases where there's just a rehash of the underlying evidence as opposed to the cases as compared to the cases or distinguished from the cases involving additional evidence? Your Honor, it wasn't clear to me if counsel for petitioner was conceding that mere rehash cases would not be reviewable. If so, we certainly agree with that. Our fallback position here is that the locomotive engineer's background rule of committed to agency discretion by law would at the very least foreclose mere rehash cases. But as Justice Breyer pointed out with respect to the text of 355 and 231G, the statute doesn't make any such distinction. And so the question here is, across the board, are reopening denials reviewable or not? And so to the extent that petitioner is conceding that rehash cases allow circumvention of the statute of limitations, ruling in petitioner's favor in this case would, of course, open up that can of worms. Thank you. Justice Breyer? Thank you. It doesn't say there isn't review. There is a very, very strong presumption of judicial review. Both briefs make good arguments on 355C, and I bet when I read Judge Henry Friendly, it's a pretty good argument. And I guess you could interpret rights and liabilities. I mean, there is language certainly in your favor in that your home case. But you might interpret it as being a final decision in respect to rights and liabilities, because he wants the rights and liabilities rule changed because of da-da-da. Okay. So why isn't there enough ambiguity and no forbidding of it that you just get under regular judicial review? Yay, PA! Final decision? Unlawful? Da-da. Your Honor, petitioner has not asserted that review under the APA would be permissible here. He's never attempted to proceed under the APA. Maybe, but why isn't it? 355G is what would preclude APA review. Then you get back to my point, which is that, look, if there is any ambiguity here, or any significant ambiguity, go with the normal presumption. In cases like your home, you see, it doesn't say no review. Correct, Your Honor, although in cases like Erica, Inc., the Court has held that there can be structural negative implications that preclude other forms of review. And our position is that the statute here precludes other forms of review. As to your presumption question, in both your home and Sanders, the case is as here, reopening was a matter of agency grace. And it makes sense in a large benefits program where reopening is a matter of agency grace that the agency could withdraw at will, not to apply the presumption in the same way it's applied in other contexts. And in particular, reopening by definition, it's attempting to reopen a prior decision that the claimant will have had an opportunity to seek judicial review of. And so there's not the same pressing need for judicial review here that there would be if we were talking about a case involving primary exhaustion of a benefits claim. Thank you. Justice Alito? There are people in the government who understand these schemes very well. And therefore, I assume there is a reason why you led off with the argument based on the Railroad Unemployment Insurance Act rather than just the provision of the Railroad Retirement Act. What is that? Again, Your Honor, the reason is that 231G makes determinations of rights or liabilities under the RRA subject to judicial review only to the same extent as corresponding rights or liabilities under the RUIA and subject to the same limitations under the RUIA. So that's why we started with the RUIA. But just to be clear, we're not running away from 231G. We think 231G is strongly confirmatory of our interpretation of 355. And as the Chief Justice pointed out, the determination of rights or liabilities language alone could preclude review in this case. Well, I'm not sure I understand the answer. Is the answer that you really think that it would be a mistake? It would be wrong as a matter of law, or it would create anomalies if we were to decide the case based solely on 231G? I don't think that it would be wrong as a matter of law, Your Honor. And I don't think that it would create serious anomalies. That being said, the government's view is that the best reading of these statutes is that 231G effectively piggybacks on 355 and is designed to pick up the same kind of decisions under 355C that would be reviewable under 355F. So the government does read the two statutes together in that respect. All right. Thank you. Justice Sotomayor? Counsel, your answer gives me great pause. I'm loathed often to go off on grounds that the parties haven't really defended or argued. And you say you don't think there'll be serious anomalies. Can you guarantee there aren't? Are you absolutely sure? Your Honor, again, our position is that that language, determination of rights or liabilities, tracks the kind of decisions that are made under subsection C. So you've answered my question, Counsel. You argue that we need not decide, at least in your brief, whether adopting your interpretation would foreclose challenges to the denial of reopening on constitutional grounds. But in the brief he submitted during his administrative appeal, Salinas appeared to make sort of a due process argument, claiming he lacked the mental capacity to understand the procedures for requesting review. Let's say we found Salinas' claim to be colorful. Would there be jurisdiction for judicial review? No, Your Honor, for two reasons. First, he's forfeited that argument. That's not something that he's raised here. And second, at the very least, I think the constitutional claim would have to be substantial. Thrive, for example, left open the possibility of extraordinary cases. And it wouldn't be sufficient for a petitioner just to recharacterize a run-of-the-mill reopening denial as a due process violation. Thank you, Counsel. Justice Kagan? Mr. Rader, has the government ever before made an argument of the kind that you're hearing here that this is resolvable only on the 231 section and not by reference to 355? Your Honor, the government's traditional arguments, as Justice Kavanaugh pointed out, have been based on 355C. And as our briefing reflects, that remains our primary argument in this case. And we view 231G as confirmatory of that traditional argument. Okay. Could I ask you about how this cross-reference really works? Because it's quite confusing to me. You know, it says decisions of the board determining rights and liabilities, as well as it says, as though the decision were a determination of corresponding rights or liabilities under the RUIA. But the RUIA never uses this language of rights or liabilities. So how do you exactly know what decisions are reviewable? You know, how the RUIA treats decisions of rights or liabilities? Your Honor, in many cases, there's going to be a direct parallel between decisions under the two acts. For example, there's reopening under the RUIA. There's also reopening under the RRA. So the translation principle won't be very difficult to apply in those sorts of cases. So is that to say, Mr. Raynor, that you're reading this as essentially just a synonym for the final decision language in 355? In other words, that you would say as though the decision were a determination of corresponding rights or liabilities under the RUIA means the same thing as though the decision were a final decision under the RUIA? Not quite, Your Honor. We're saying that determinations of rights or liabilities is effectively a synonym for final decisions under subsection C under the RUIA. Okay. That's all. Thank you very much. Justice Gorsuch? Good morning, counsel. I want to follow up on Justice Sotomayor's inquiry about constitutional challenges. Page 15 and 16 of the brief, you say foreclosing garden variety reopening motions like the one here would not raise any distinct issue of a rare case in which the judicial review either on 231 or 355C appear to be no statutory basis to allow judicial review of any reopening decision. Where does this special exception for constitutional challenges come from, and how do we know what a good one, a garden variety one is compared to a really, the merits would determine our I think the court articulated that the presumption in favor of judicial review is stronger for constitutional claims. I understand that, counsel. I'm talking about the statute. Can you help me there? Yes. So 355G is the preclusion provision here. And in Thunder Basin, the court said that a preclusion provision like this might not bar other forms of review for issues that were truly collateral to the agency's mission. And so one doctrinal way to approach this would be to say that a substantial constitutional claim is collateral to the agency's mission and is not covered by 355G. But again, he's not pressing that here. And as in Thrive, the court could simply leave that open for a future case. Thank you. Justice Kavanaugh. Thank you. And thank you, Mr. Rayner. The greater includes the lesser argument that I understand you to be making in part, namely that the government's, they're not required to grant reopening. So if they allow reopening, they can deny judicial review. I mean, that's not usually how administrative law works. Yes, you have discretion whether to provide this particular kind of avenue for relief. But I'm not aware of examples like this where, but if we do so, we can just cut off all judicial review of it. What's your response to that? The special thing about reopening here is that unlike other discretionary decisions, for example, in Hawks, this is something that's a free benefit above and beyond the main exhaustion process, the substantive entitlement to benefit. And the court has recognized this grace principle in both Sanders and your home, which are the most on point. I'm sorry to interrupt, but it's important, right? So that it is possible that the reopening petition, the board will mistakenly deny reopening and the railroad worker should have received benefits. And so I don't know about saying it's above and beyond. In that case, the worker should have gotten the benefits, did not. And you're saying no judicial review. Your Honor, in any reopening case, the claimant could have exhausted his original claim and thought judicial review at that time. And that's all that the statute requires. Sorry to interrupt, but the whole point of these is that there is often new evidence that could not have been presented at the time. That's the point. It's not a rehash. There's new evidence that shows that the initial determination was wrong. And you're saying even if the board makes a mistake on the reopening, this evaluates the new evidence, no judicial review. Forget about it. That's correct. And there's nothing surprising about that from the perspective of congressional intent. I understand your larger point on that. You said earlier that there was no, and you've just reiterated, I guess, no pressing need for judicial review here. I guess I'm not sure about that, given the example I just gave. But on the flip side, the burden on the courts seems to be almost nil in the D.C. circuit, at least in the last five years. Trouble finding any case that involved judicial review of a denied reopening in this context. The floodgates concern does not seem to be a real one, but you can correct me if that's wrong. Your Honor, I agree that the absolute number of reopening petitions is low, and we're not really pushing the floodgates argument. I think that's my problem. Sneak one last one in. On 231G, I understood your answer to Justice Kagan to be actually that's right. The government has never argued before in the many decades of this that you could resolve this on 231G alone. Indeed, 231G did not really appear in a lot of the government's position in arguing these decades. Is that accurate? I agree, Your Honor, that the board has not traditionally interpreted 231G in isolation. Okay. Very helpful, Mr. Reynolds. Thank you very much. Justice Barrett? Thank you. So, counsel, when the Chief Justice asked you if there would be a practical problem in having a different scope of review under the RRA and the RUIA, you said, well, it would be conforming to our view of 355. So, in other words, if we interpret 355 the way you would like us to to cover review only of claims under 355C, then it's the exact same for both. But what if we disagree with you? What if we say, no, review under 355 is of any final decision? And so then there may be a different scope. What practical problems might arise then? Your Honor, I don't know that it would be a practical problem so much as sort of counterintuitive from the perspective of congressional intent. In that world, for example, a claimant could obtain judicial review of reopening under the RUIA, but wouldn't be able to obtain judicial review of reopening under the RRA. And that's an anomaly that might be surprising to think that Congress intended that. But it probably wouldn't be a practical problem per se. Have there been many cases in which courts, I mean, I'm aware of one, but have courts ever held that motions for reopening are reviewable as opposed to are not reviewable under the RUIA? Well, is all the action in the RRA context? Your Honor, most of these cases arise in the RRA context, which is a far greater number of beneficiaries. I don't know the precise number of cases that pertain to the RUIA specifically. And of course, under the government's approach, there's really no difference in the analysis under either statute. Is the reason why the government would prefer for us to decide this under 355 is that it then takes care of making sure that the scope is the same and the narrow one that you proposed for purposes of both the RUIA and the RRA as opposed to using 231G, which narrows only RRA claims? Certainly, we would agree that interpreting the statutes in harmony and creating symmetry between the two provisions is the most plausible understanding of congressional intent. Again, as a practical matter, the RRA, there's a far greater number of beneficiaries under the RRA. Thank you. We have time for additional questioning of Mr. Raynor. If any members of the court have questions they'd like to ask. If not, Mr. Raynor, why don't you take a couple of minutes for wrapping up? Thank you, Mr. Chief Justice. One thing I would just like to touch on is counsel for petitioners point that this is a new evidence case rather than a rehash case. I want to just reiterate that there's no basis in the statute for that distinction. Standards in your home don't distinguish between new evidence and rehash cases. Even on the facts of this case, petitioner argued below that there was an error on the face of the record. That was his basis for reopening in the Fifth Circuit. The reason for that is that there's a four-year limitations period on raising new evidence. His reopening application is effectively dead in the water if he's attempting to raise new evidence because he filed the reopening motion far more than four years after the original determination. If the court ended up going that route and making that distinction, remand would be appropriate to determine whether this actually is new evidence and if it is, whether reopening is appropriate. In closing, I would just like to note that at the end of the day, petitioner's argument boils down to two presumptions. The last hand is he enrolled in the presumption in favor of judicial review. And to the extent they apply here at all, both of those presumptions have diminished force and are easily overcome. Instead of focusing on the presumption, this court should focus on the text and structure. Section 231G says that only determinations of rights or liabilities are reviewable. That language tracks 355, which only allows review of decisions under subsection C, which, again, are substantive determinations about a party's entitlement to rights or benefits or coverage under the statute. Petitioner focuses on interpreting certain words and phrases in isolation. He has no explanation for how the different interpretation and contrast harmonizes the different provisions and reflects the orderly review scheme that Congress intended. This court should affirm the judgment below. Thank you. Thank you, Counsel. Ms. Harris, three minutes for rebuttal. Thank you, Mr. Chief Justice. Three points. First of all, there is absolutely no reason to go out on a limb that is fairly untested and that I think the government is not fully aware of. I think it would be really perverse to do so. If you had a situation where short-term beneficiaries under the RUIA were entitled to reopening yet long-term beneficiaries under the RRA were not, it really would sort of take the statutory scheme upside down because it is the long-term beneficiaries who are the ones who are most in need of a check after that initial denial or grant of benefits on changed circumstances. They're the people who have these benefits for potentially a long time or need them for a long time. And while the government doesn't seem to see any anomalies in the scheme, I do think there are at least some because the definition of an employer is the same across the statutes. And so I take the government's position to be well, perhaps if all final decisions under the RUIA are reviewable, then employers could get reopening with respect to whether or not they are covered by the RUIA. For instance, if they could show that initial coverage determination was wrong for some reason or if they had new evidence about that wasn't considered or changed circumstances. But yet they somehow couldn't do that under the RRA, even though that's the scheme that tends to take the most, tends to bear the heaviest burden on employers. Again, that would be hugely perverse. And if you thought that reopening isn't a right or liability under the RRA because it's not a change from the status quo, you'd also have real concerns about other determinations that suddenly wouldn't seem to be reviewable either under that scheme. For instance, denials of modifications of benefits or terminations of benefits where, for instance, let's say the employer found fraud and wanted to reopen a long-term annuity decision and alert the board to it. That wouldn't be subject to reopening either or where someone has a much graver disability and wants to modify their benefits on that basis. Second of all, with respect to discretionary determinations, the agency grace point, I think, fails. I do think this is the same as HAWQs where the court said there's no counter-blessing of principle. There was no obligation under the statute and no mention in the Clean Water Act of standalone jurisdictional determinations, but they were still reviewable once the agency did them. And third, the government has no explanation for why reopening denials would ever be reviewable. And we know they are reviewable in so many contexts, including the immigration context for nearly a century. And our explanation, I think, explains standards in your home, which is that while the reopening denials in those cases might have been final decisions, they are not ones that the agency has manageable standards for reviewing. Thank you, counsel. The case is submitted.